# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

KRISTINA GREENE, <u>et al.</u>,

        Plaintiffs,


v.                                    **MEMORANDUM OF LAW & ORDER**
                             Civil File No. 14-3195 (MJD/LIB)

MINNESOTA GOVERNOR
MARK DAYTON, <u>et al.</u>,

        Defendants.

---

Tara Craft Adams, Thomas R. Revnew, and Douglas P. Seaton, Seaton, Peters & Revnew, PA, Counsel for Plaintiffs.

Alan I. Gilbert and Jacob D. Campion, Minnesota Attorney General's Office, Counsel for Defendants Mark Dayton, Josh Tilsen, and Lucinda Jesson.

Peder J.V. Thoreen and Scott A. Kronland, Altshuler Berzon LLP, and Brendan D. Cummins and Justin D. Cummins, Cummins & Cummins, PLLP, Counsel for Defendant SEIU Healthcare of Minnesota.

---

## I.      INTRODUCTION

This matter is before the Court on Defendant SEIU Healthcare Minnesota's

Motion to Dismiss the Amended Complaint [Docket No. 43] and Defendants

Mark Dayton, Josh Tilsen, and Lucinda Jesson's Motion to Dismiss the Amended

Complaint [Docket No. 47].  Also before the Court is Defendant SEIU Healthcare

of Minnesota's Motion for Rule 11 Sanctions [Docket No. 57].  The Court heard

oral argument on the Motion for Rule 11 Sanctions on December 12, 2014, and

considered the motions to dismiss on the parties' submissions.

For the reasons set forth below, the Court grants the Motions to Dismiss

the Amended Complaint and denies Defendant SEIU Healthcare of Minnesota's

Motion for Rule 11 Sanctions.

## II.      BACKGROUND

### A.      Factual Background

#### 1.      The Parties

Plaintiffs are six individuals who allege they provide homecare services to

disabled individuals and family members as part of Minnesota's Medicaid

programs.  (Am. Compl. ¶¶ 1-6 [Docket No. 42].)  Under these programs, the

State of Minnesota pays homecare providers, like Plaintiffs, to deliver vital

"direct support services" to individuals with disabilities or the elderly.  See

Minn. Stat. § 256B.0711, subd. 1(b).

Defendant SEIU Healthcare Minnesota ("SEIU") is a labor organization,

elected in 2014 to represent personal healthcare attendants in Minnesota.  (Am.

Compl. ¶¶ 10, 27 and Ex. D.)  Defendant Mark Dayton is sued in his official

2

capacity as the governor of Minnesota.  (Id. ¶ 7.)  Defendant Josh Tilsen is sued

in his official capacity as the Commissioner of the Bureau of Mediation Services

("BMS"), which administers labor relations programs in Minnesota.  (Id. ¶ 8.)

Defendant Lucinda Jesson is sued in her official capacity as the Commissioner of

the Minnesota Department of Human Services ("DHS"), which provides

essential services to Minnesota seniors, people with disabilities, and children.

(Id. ¶ 9.)

### 2. The Individual Providers of Direct Support Services Representation Act

In the Amended Complaint, Plaintiffs challenge the Individual Providers

of Direct Support Services Representation Act ("Act"), 2013 Minn. Law Ch. 128,

Art. 2, codified at Minn. Stat. § 179A.54, § 256B.0711.  (Am. Compl. p. 1.)   The

Act, signed by Governor Dayton on May 24, 2013, provides that, "[f]or the

purposes of the Public Employment Labor Relations Act . . . individual

[homecare] providers shall be considered . . . executive branch state employees. .

. .  This section does not require the treatment of individual providers as public

employees for any other purpose."  Minn. Stat. § 179A.54, subd. 2; see also Minn.

Stat. § 179A.54, subd. 1(b); Minn. Stat. § 256B.0711, subd. 1(d).

### 3.   The Election of SEIU as Exclusive Representative for Individual Homecare Providers

Under Minnesota's Public Employment Labor Relations Act ("PELRA"), public employees have "the right by secret ballot to designate an exclusive representative to negotiate . . . the terms and conditions of employment with their employer."  Minn. Stat. § 179A.06, subd. 2.  Once a union is certified under PELRA, the public employer "has an obligation to meet and negotiate in good faith with the exclusive representative . . . regarding . . . the terms and conditions of employment."  Minn. Stat. § 179A.07, subd. 2.  For state employees, any agreement reached must be presented to the Minnesota legislature for approval or rejection.  Minn. Stat. § 179A.22, subd. 4.  If a union is certified under PELRA, the employees in the bargaining unit are not required to become members of the union: PELRA gives employees the "right not to . . . join such organizations" and makes it an "unfair labor practice" for public employers or employee organizations to "restrain[] or coerce[]" employees in the exercise of that right. Minn. Stat. § 179A.06, subd. 2; § 179A.13, subds. 1, 2(1), 3(1).

On August 26, 2014, SEIU was certified as the exclusive representative for individual homecare providers.  (Am. Compl. ¶ 27 and Ex. D.)

**B.      Procedural History**

**1.      Motion for Preliminary Injunctive Relief**

On August 18, 2014, Plaintiffs filed a Complaint against Defendants

Minnesota Governor Mark Dayton; BMS; Josh Tilsen, in his official capacity as

BMS Commissioner; DHS; Lucinda Jesson, in her official capacity as DHS

Commissioner; and SEIU.  [Docket No. 1]  The Complaint alleged one count of

Preemption by Federal Labor Law.  Also on August 18, Plaintiffs filed a Motion

for Preliminary Injunction, or in the Alternative, a Temporary Restraining Order

requesting that the Court enjoin Defendants from implementing or enforcing the

Act by impounding the ballots.  [Docket No. 5]

In a Memorandum of Law & Order dated August 25, 2014, this Court

denied Plaintiffs' motion for preliminary injunctive relief, finding that the

Plaintiffs had failed to demonstrate a likelihood of success on the merits.  See

Greene, et al. v. Dayton, et al., Civil File No. 14-3195 (MJD/LIB) (D. Minn. Aug.

25, 2014) [Docket No. 36].  The Court also dismissed all claims relating to

Defendant BMS and Defendant DHS based on Eleventh Amendment immunity.

**2.      The Amended Complaint and Motions to Dismiss**

On September 9, 2014, the Plaintiffs filed an Amended Complaint asserting

three counts: (1) Preemption under the National Labor Relations Act ("NLRA");

(2) Tortious Interference with Employment; (3) and Violation of the Contracts

Clauses of the United States and Minnesota Constitutions.  [Docket No. 42]

On September 18, 2014, SEIU filed a Motion to Dismiss the Amended

Complaint in its entirety for failure to state a claim under Rule 12 of the Federal

Rules of Civil Procedure and, in the alternative, dismissal of Counts II and III for

lack of ripeness.  [Docket No. 43]   On September 23, 2014, Governor Dayton,

Commissioner Tilsen, and Commissioner Jesson (the "State Defendants") moved

to dismiss the Amended Complaint for lack of jurisdiction and failure to state a

claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure.  [Docket No. 47]

### 3.    The Motion for Sanctions

On October 31, 2014, SEUI filed a motion for sanctions pursuant to Rule 11

of the Federal Rules of Civil Procedure.  [Docket No. 57]

## III.    MOTIONS TO DISMISS

### A.    Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may

move the Court to dismiss a claim if, on the pleadings, a party has failed to state

a claim upon which relief may be granted.  In reviewing a motion to dismiss, the

Court takes all facts alleged in the complaint to be true.  <u>Zutz v. Nelson</u>, 601 F.3d

842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is
> plausible on its face.  Thus, although a complaint need not include
> detailed factual allegations, a plaintiff's obligation to provide the
> grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do.

<u>Id.</u> (citations omitted).

"Jurisdictional issues, whether they involve questions of law or of fact, are

for the court to decide."  <u>Osborn v. United States</u>, 918 F.2d 724, 729 (8th Cir.

1990).  "In order to properly dismiss for lack of subject matter jurisdiction under

Rule 12(b)(1), the complaint must be successfully challenged on its face or on the

factual truthfulness of its averments."  <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir.

1993) (citation omitted).

### B.     Count I

The State Defendants and SEIU move to dismiss Count I of the Amended

Complaint for failure to state a claim.  In Count I, Plaintiffs aver that the Act is

preempted by the National Labor Relations Act ("NLRA") because personal care

attendants are domestic employees who are excluded from coverage under the

NLRA, based on the Supreme Court's decision in <u>Harris v. Quinn</u>, 134 S.Ct. 2618

7

(2014) and 29 U.S.C. § 152(3).  (Am. Compl. ¶¶ 29-33.)  Defendants argue that

dismissal as a matter of law is appropriate for the same reasons as the Court

previously held in denying Plaintiffs' motion for preliminary injunctive relief.

The Court agrees.

The Supreme Court has adopted two NLRA preemption principles.

Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 748 (1985).  First, "[t]he so-called

Garmon rule protects the primary jurisdiction of the NLRB to determine in the

first instance what kind of conduct is either prohibited or protected by the

NLRA."  Id.  (citing San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236

(1959)).  Second, Machinists preemption "protects against state interference with

policies implicated by the structure of the Act itself, by pre-empting state law

and state causes of action concerning conduct that Congress intended to be

unregulated."  Id. at 749; see also Machinists v. Wis. Emp't Relations Comm'n,

427 U.S. 132 (1976).

In denying Plaintiffs' motion for preliminary injunctive relief, this Court

analyzed whether the NLRA preempts the Act under both the Garmon and

Machinist standard.  As discussed in that opinion, Sections 7 and 8 of the NLRA

only give rights to those classified as "employees" by the statute.  See 29 U.S.C.

§§ 157, 158(a)(1), (b)(1).  Individuals employed "in the domestic service of any family or person at his home," like Plaintiffs, are excluded from the definition of "employee" under 29 U.S.C. § 152(3).  The Supreme Court in <u>Harris v. Quinn</u> recently referred to Illinois' homecare providers as "personal assistants," and reaffirmed that they are not covered by the NLRA:

> Federal labor law reflects the fact that the organization of household workers like the personal assistants does not further the interests of labor peace.  "[A]ny individual employed . . . in the domestic service of any family or person at his home" is excluded from coverage under the National Labor Relations Act.  <u>See</u> 29 U.S.C. § 152(3).

134 S. Ct. at 2624, 2640.  Because homecare providers are excluded from NLRA coverage through the domestic services exclusion, this Court concluded that <u>Garmon</u> preemption does not apply.  <u>Greene, et al. v. Dayton, et al.</u>, Civil File No. 14-3195 (MJD/LIB), slip op. at 16-17 (D. Minn. Aug. 25, 2014).

Under the <u>Machinist</u> standard, this Court held that "there is no indication that Congress intended the area of domestic services to be free from all regulation."  (<u>Id</u>. 17-18.)  As noted, courts have held that the exclusion of agricultural workers under 29 U.S.C. § 152(3) did not preempt state regulation of labor relations of those workers.  <u>See</u> <u>Willmar Poultry Co., Inc. v. Jones</u>, 430 F. Supp. 573, 578 (D. Minn. 1977) (Alsop, J.) (concluding that state regulation of

agricultural laborers was likely not preempted because of the lack of legislative

history or indication of intent to leave them unregulated); United Farm Workers

of Am., AFL-CIO v. Ariz. Agric. Emp't Relations Bd., 669 F.2d 1249, 1257 (9th Cir.

1982) ("We find nothing in the [NLRA] to suggest that Congress intended to

preempt such state action by legislating for the entire field.  Indeed, we draw

precisely the opposite inference from Congress's exclusion of agricultural

workers from the Act.").  Accordingly, this Court held that Plaintiffs were

unlikely to succeed under the Machinist preemption standard.  Greene, et al. v.

Dayton, et al., Civil File No. 14-3195 (MJD/LIB), slip op. at 17-18 (D. Minn. Aug.

25, 2014).

    In the Amended Complaint, Plaintiffs focus solely on the Machinist

standard, alleging that 29 U.S.C. § 152(3) was intended to be a total and complete

exclusion of the category of domestic service workers from collective bargaining.

The only new factual allegations in the Amended Complaint relate to the

outcome of the election.

    As discussed above, this Court has already squarely addressed Plaintiffs'

preemption claim under a Machinist standard and held that Plaintiffs had a low

likelihood of success.  Contrary to Plaintiffs' arguments, the exclusion of

10

domestic service workers from the NLRA's definition of "employee," alone, is

not sufficient to support a finding of <u>Machinist</u> preemption.  As <u>Willmar Poultry</u>

noted:

> because there is no legislative history to indicate that the NLRA's
> exclusion of agricultural laborers from its coverage was intended to
> leave the area totally free from regulation and because <u>the exclusion</u>
> <u>standing alone is to be understood to mean that federal policy is</u>
> <u>indifferent</u> . . . [<u>Machinist</u> preemption] would not preempt the State
> of Minnesota's regulation of labor relations activity involving
> employees whom the NLRB has determined to be "agricultural
> laborers."

430 F. Supp. at 578 (emphasis added).  Plaintiffs have not identified any new

legislative history or precedent to suggest that Congress intended to leave

homecare workers totally free from regulation.

Plaintiffs' other arguments are unavailing.  Plaintiffs argue that Congress

declined to regulate home care workers because those categories of workers have

less of a need for collective bargaining.  Even assuming that were true, it merely

suggests that Congress did not intend to regulate home care workers, not that the

states are precluded from doing so.  Plaintiffs' reliance on the Ninth Circuit's

decision in <u>North Whittier Heights Citrus Association</u> is similarly misplaced,

because that case does not deal with preemption, but whether the workers at

issue were agricultural laborers.  109 F.2d 76, 80 (9th Cir. 1940).  At most, <u>North</u>

<u>Whittier</u> stands for the proposition that agricultural laborers are exempt from the NLRA, and share a "common denominator" with the other exempt groups (like domestic service workers). <u>Id.</u>  This only reinforces the applicability of the cases dealing with agricultural workers to the present situation.  Finally, Plaintiffs' position that the Minnesota Labor Relations Act precludes collective bargaining for homecare workers misses the mark.  That statute lists an exclusion for domestic service employees that parallels NLRA's exclusion.  Minn. Stat. § 179.01, subd. 4.  Therefore, it does not conflict with federal law.  To the extent it conflicts with the Act—a state law—the later-enacted statute prevails.  <u>See</u> Minn. Stat. § 645.26(4).

Therefore, for the reasons stated above, the Court concludes that Plaintiffs have failed to state a claim for preemption of the Act by the NLRA.

### C.    Counts II and III

At the December 12, 2014 hearing, Plaintiffs conceded that if the Court found that the Act was not preempted by the NLRA and dismissed Count I of the Amended Complaint, Counts II and III must also be dismissed because the Defendants' actions in implementing and enforcing the Act were justified. Because the Court concludes that Count I cannot be sustained as a matter of law, it will dismiss Counts II and III of the Amended Complaint.

12

Notwithstanding this concession, the Court concludes that Counts II and III must be dismissed.  Plaintiffs cannot proceed against the State Defendants on Counts II and III, because Plaintiffs' state-law claims against the State Defendants are barred by the Eleventh Amendment.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106, 121 (1984) (barring suits against state officials on the basis of state law).  Their claim under the United States Constitution's Contracts Clause also fails, because the Plaintiffs have failed to allege that the State Defendants have threatened or are about to commence proceedings against Plaintiffs or anyone else under the state statute.  See Ex Parte Young, 209 U.S. 123, 156 (1908) (permitting claims for injunctive relief against state officials to proceed against "officers of the state . . . who threaten and are about to commence proceedings . . . to enforce against parties affected an unconstitutional act, violating the Federal Constitution . . . ."); North Dakota v. Swanson, Civil No. 11-3232 (SRN/SER), 2012 WL 4479246, at * 18-19 (D. Minn. Sept. 30, 2012) (dismissing claims against Minnesota Attorney General based, in part, on the lack of allegations that the Attorney General has threatened a suit or is about to commence proceedings against plaintiff or anyone else under state statute); Advanced Auto Transp., Inc. v. Pawlenty, Civil No. 10-159 (DWF/AJB), 2010 WL

2265159, at * 3 (June 2, 2010) (dismissing claims against Minnesota Governor and Attorney General where plaintiff failed to allege they threatened suit or were about to commence proceedings against the plaintiff).

The Court also dismisses Plaintiffs' remaining claims against SEIU.  With respect to the alleged violation of the Contracts Clause of the Minnesota and Federal Constitutions, Plaintiffs have alleged only that they can no longer negotiate the terms and conditions of future employment contracts—they have not identified a current contractual right that has been impaired by the Act. Because the right to enter a future agreement does not appear to implicate either of the Contracts Clauses, they have failed to state a claim for relief.   See, e.g., Texaco, Inc. v. Short, 454 U.S. 516, 531 (1982) ( "[A] statute cannot be said to impair a contract that did not exist at the time of its enactment"; the "right to enter such an agreement" may be impaired, but that is "not a contract right"); Hawkeye Commodity Promotions, Inc. v. Vilsack, 486 F.3d 430, 436 (8th Cir. 2007) (holding that a Contract Clause claim requires a showing that state law substantially impairs "pre-existing" contractual obligations).

Plaintiffs' claim for tortious interference must also be dismissed, because SEIU has failed to include any factual allegations in the Amended Complaint

relating to SEIU's knowledge of the contract or intentional procurement of the

breach, two essential elements of the claim.  See Bouten v. Richard Miller Homes,

Inc., 321 N.W.2d 895, 900 (Minn. 1982) (listing elements of tortious interference

with contract as: (1) existence of a contract; (2) the alleged wrongdoer's

knowledge of the contract; (3) the intentional procurement of its breach; (4)

without justification; and (5) damages caused by the breach).

Accordingly, the Court also dismisses Counts II and III against both the

State Defendants and SEIU.

## IV.    MOTION FOR SANCTIONS

SEIU also moves for sanctions under Rule 11 of the Federal Rules of Civil

Procedure, arguing that Plaintiffs have commenced this action to interfere with a

democratic election, on legal theories that are not supported by existing law or a

non-frivolous argument for extending the law.   It asks the Court to dismiss the

Amended Complaint and require Plaintiffs to reimburse SEIU and the State

Defendants for their attorneys' fees.

Rule 11 of the Federal Rules of Civil Procedure requires an attorney to

certify that, for any pleading or motion:

>     (1) it is not being presented for any improper purpose, such as to
>     harass, cause unnecessary delay, or needlessly increase the cost of
>     litigation;
>
>     (2) the claims, defenses, and other legal contentions are warranted
>     by existing law or by a nonfrivolous argument for extending,
>     modifying, or reversing existing law or for establishing new law;
>
>     (3) the factual contentions have evidentiary support or, if specifically
>     so identified, will likely have evidentiary support after a reasonable
>     opportunity for further investigation or discovery; and
>
>     (4) the denials of factual contentions are warranted on the evidence
>     or, if specifically so identified, are reasonably based on belief or a
>     lack of information.

Fed. R. Civ. P. 11(b).  Rule 11 requires attorneys to "conduct a reasonable inquiry

of the factual and legal basis for a claim before filing."  Coonts v. Potts, 316 F.3d

745, 753 (8th Cir. 2003).  A claim is subject to sanctions if a "reasonable and

competent" attorney would not "believe in the merit of an argument."  Id.

(citation omitted).

Although the Court finds that the Amended Complaint cannot survive a

motion to dismiss, the Court does not find that sanctions are warranted in this

case.  While the Court denied Plaintiffs' motion for preliminary injunctive relief

under a Machinist preemption theory, it did so on the limited grounds that

Plaintiffs, at that time, had not demonstrated a likelihood of success on the

merits—not that Plaintiffs could never succeed on the merits.  Even though the

case law regarding the agricultural worker exemption of the NLRA seems well-

settled, there is no controlling authority on point relating to homecare workers,

and Plaintiffs advanced arguments that were not addressed by the Court's prior

ruling.  Similarly, despite the legal deficiencies in Counts II and III, they are not

so unreasonable as to merit sanctions.  Therefore, the Court denies SEIU's

request for sanctions.

Accordingly, based upon all the files, records, and proceedings herein, **IT**

**IS HEREBY ORDERED:**

1. Defendant SEIU Healthcare Minnesota's Motion to Dismiss the Amended Complaint [Docket No. 43] is **GRANTED**.

2. The State Defendants' Motion to Dismiss the Amended Complaint [Docket No. 47] is **GRANTED**.

3. Defendant SEIU Healthcare Minnesota's Motion for Rule 11 Sanctions [Docket No. 57] is **DENIED**.

4. The Amended Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 26, 2015          s/ Michael J. Davis
                                  Michael J. Davis
                                  Chief Judge
                                  United States District Court

17